[No. B042110. Second Dist., Div. Two. Mar. 27, 1990.]

ORDELL M. MUNDY, Plaintiff and Appellant, v.
MUTUAL PROTECTION TRUST et al., Defendants and
Respondents.

**COUNSEL**

Parker, Stanbury, Babcock, Combs & Bergsten and Arthur T. Schaertel for Plaintiff and Appellant.

Waldman, Bass, Stodel & Graham, Irwin Waldman and George Chuang for Defendants and Respondents.

## OPINION

ROTH, P. J.—Plaintiff Orell M. Mundy appeals from the judgment entered in favor of defendants Cooperative of American Physicians, Inc., and Mutual Protection Trust after the trial court granted defendants' motion for judgment on the pleadings. Plaintiff's lawsuit, brought after she litigated a medical malpractice action, is merely an attempt to recover additional compensation in the form of punitive damages from defendants who are entities with whom she was not in a contractual relationship based upon a claim of bad faith refusal to negotiate a settlement. We will reject plaintiff's efforts to expand the now discredited theory of permitting such actions by third party claimants.

To place the matter in proper context, we begin with a chronological statement of the relevant events.

In August 1978, Dr. James Vaccaro, a plastic cosmetic surgeon, rendered medical treatment to plaintiff.

In August 1979, plaintiff filed a medical malpractice action against Dr. Vaccaro. She made a settlement demand for $65,000. Dr. Vaccaro offered $7,500 to settle the matter. Neither demand nor offer was accepted.

The case proceeded to trial and the jury awarded plaintiff $25,000 in compensatory damages and $50,000 in punitive damages. However, the trial court granted Dr. Vaccaro's subsequent motion for a judgment notwithstanding the verdict and thereby struck all of the award for punitive damages. In so ruling, the trial court stated: "By no stretch of the imagination do I feel that this case is one that justifies any award for punitive damages. At best, it was a borderline case of negligence.

". . . . . . . . . . . . . . . . . . .

"The Court feels an injustice has occurred . . . . [¶] There is an insufficiency of evidence by any stretch of the imagination to support the jury's verdict for fraud or malice, thereby justifying a judgment in terms of punitive damages."

Plaintiff appealed the trial court's ruling. In a nonpublished opinion (*Mundy* v. *Vaccaro*, 2d Civ. 70083) filed in October 1984, Division Seven of this court affirmed the judgment, primarily because of plaintiff's "purposeful, voluntary and unexcusable failure to bring up a complete reporter's transcript on appeal." The $25,000 judgment was satisfied.

That month, plaintiff filed the complaint which initiated the lawsuit underlying this appeal. Citing Insurance Code section 790.03, she asserted

defendants Mutual Protection Trust and Cooperative of American Physicians, Inc., in bad faith refused to engage in reasonable settlement negotiations of her claim against Dr. Vaccaro and thereby sought the recovery of compensatory and punitive damages from them.[1]

In order to evaluate plaintiff's claim, we first must examine defendants' legal status. Both entities were created by legislation enacted in 1976. The Legislature expressly stated that the act was "an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution, and shall go into immediate effect. The facts constituting such necessity are: [¶] Due to the continuing medical malpractice insurance crisis, it is necessary that this act take effect immediately so that the interindemnity arrangements may commence functioning at the earliest possible time in order to avert the loss of services provided by health care providers." (Assem. Bill No. 1898 (1976) ch. 1462, § 5, p. 20.)

The legislation added section 1280.7 to the Insurance Code and amended section 25100 of the Corporations Code. Its effect was to authorize the formation of interindemnity arrangements between members of a cooperative corporation whose members consisted of licensed physicians and surgeons. Hence, defendant Cooperative of American Physicians, Inc. (hereinafter CAP), a voluntary organization open to doctors, was created. Membership in CAP permits the physician to participate in defendant Mutual Protection Trust (hereinafter MPT). Defendant MPT is an interindemnity arrangement which indemnifies its members in respect to medical malpractice claims. The money is paid from a collective reserve trust funded by contributions from members. Dr. Vacarro was a member of MPT.

Insurance Code section 1280.7 specifically provides that "this chapter and the other provisions of this Code, except as set forth in this paragraph, shall not apply to or affect unincorporated interindemnity or reciprocal or interinsurance contracts between members of a cooperative corporation . . . whose members consist solely of physicians and surgeons licensed in California, which contracts indemnify solely in respect to medical malpractice claims against such members . . . ."  Hence, Insurance Code section 790.03, which sets forth various unfair claims settlement practices, is one of the provisions of the Insurance Code which the Legislature specifically provided would *not* be applicable to interindemnity arrangements.

Instead, Corporations Code section 25100, subdivision (q)(1) vests in the Commissioner of Corporations the right to seek legal redress against any

---

[1] The complaint also alleged defendants acted in bad faith for prosecuting an appeal of the medical malpractice action. This claim is patently false as the record unequivocally establishes that it was plaintiff who initiated the appeal.

party violating any provision of Insurance Code section 1280.7,[2] including subdivision (f) of that statute which defines "unfair methods of competition and deceptive acts or practices with respect to cooperative corporations or interindemnity agreements."

It is against this background that plaintiff asserts she has a right, as a third party claimant, to sue defendants for unreasonably failing to effectuate a settlement of her malpractice claim against Dr. Vaccaro.

As plaintiff was not a party to the agreements executed between Dr. Vaccaro and defendants, any duty defendants may have had to settle her claim ran to him and not to her. (See *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 941 [132 Cal.Rptr. 424, 553 P.2d 584].) Thus, the interindemnity agreement itself cannot provide a theory of recovery for plaintiff.

Recognizing this settled principle, plaintiff asserts that the statutory scheme creates her cause of action. To evaluate this contention, we first review the guiding case law in this area.

To begin, in *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], the California Supreme Court held that Insurance Code section 790.03, a provision of the Unfair Practices Act, created a private cause of action in favor of a third party claimant against an insurer for engaging in unfair claims settlement practices. The primary basis of the holding was the analysis that since Insurance Code section 790.09 provided that cease and desist orders issued by the Insurance Commissioner shall not "relieve or absolve" an insurer from any "civil liability or criminal penalty under the laws of this State arising out of the methods, acts or practices found unfair or deceptive," an insurer's breach of a duty purportedly owed directly to a third party claimant to settle created an independent theory of recovery.

*Royal Globe's* holding had pernicious effects. It promoted multiple litigation because it encouraged two lawsuits by the injured claimant: the first suit against the insured and the second suit against the insurer for bad faith refusal to settle. This encouraged unwarranted settlement demands by claimants and coerced inflated settlements by insurers seeking to avoid the cost of a second lawsuit and exposure to a bad faith action. (See *Moradi-*

---

[2] Corporations Code section 25100, subdivision (q)(1) states: "(1) Whenever it appears to the commissioner that any person has engaged or is about to engage in any act or practice constituting a violation of any provision of Section 1280.7 of the Insurance Code, the commissioner may in the commissioner's discretion bring an action in the name of the people of the State of California in the superior court to enjoin the acts or practices or to enforce compliance with Section 1280.7 of the Insurance Code. Upon a proper showing a permanent or preliminary injunction, restraining order or writ of mandate shall be granted and a receiver or conservator may be appointed for the defendant or the defendant's assets."

*Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 298-299, and 301-303 [250 Cal.Rptr. 116, 758 P.2d 58] and commentators cited therein.)

Consequently, when the Supreme Court had occasion to revisit *Royal Globe, supra,* it unequivocally overruled its holding. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287.) It held: "Neither section 790.03 nor section 790.09 was intended to create a private civil cause of action against an insurer that commits one of the various acts listed in section 790.03, subdivision (h)." (*Id.,* at p. 304.)

In light of this development of the law, plaintiff's claim must fail. No provision in Insurance Code section 1280.7 explicitly authorizes a third party action if an interindemnity arrangement or cooperative corporation fails to settle a claim. While it is true subdivision (f) of Insurance Code section 1280.7 defines various "unfair methods of competition and deceptive acts or practices," there is no express language authorizing a civil lawsuit by a third party claimant for any violation thereof. The Legislature could have and would have provided language creating a private cause of action if it so desired. It did not. Indeed, as previously pointed out, Corporations Code section 25100, subdivision (q)(1) authorizes administrative enforcement if there is a violation. (See fn. 2, *ante.*) Thus, given the Legislature's deafening silence on the point and *Moradi-Shalal*'s repudiation of judicial legislating in the arena, we reject plaintiff's request to create a heretofore unrecognized cause of action.

▆▆▆▆ Anticipating that a fair and reasoned analysis of precedent and the statutes would lead to our conclusion, plaintiff has the following "fall-back" position. Essentially, she urges that for various reasons, defendants are not a cooperative corporation and/or interindemnity arrangement within the meaning of Insurance Code section 1280.7 and thus not entitled to the benefit of our analysis. Stated another way, plaintiff urges that defendants were insurers subject to the proscriptions of Insurance Code section 790.03; that defendants violated that law; and that she may still maintain a *Royal Globe* action since she obtained a final judgment determining Dr. Vaccaro's liability and she filed her complaint before *Moradi-Shalal* became final.[3]

▆▆ In this regard, she tenders the following. First, she cites to deposition testimony from the chief executive officer of both CAP and MPT that defendants sometimes indemnify their members for claims that are not labelled "medical malpractice" to support her argument defendants are

---

[3] *Moradi-Shalal* does not apply to *Royal Globe* actions filed before its holding became final and in which the claimant had obtained a final judicial determination of the insured's liability (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at pp. 305 and 313.)

violating Insurance Code section 1280.7's mandate that the contracts "indemnify solely in respect to medical malpractice claims." However, a contextual reading of the deposition testimony makes clear that other torts claims are only indemnified if, in fact, they are derivative of a claim of professional negligence.[4]

Second, she urges defendants are essentially in the business of insurance. Nothing in the record supports this claim. In fact, when the legislation authorizing the creation of cooperative corporations and interindemnity arrangements was sent to the Governor, he responded: "This bill is not insurance . . . . It merely allows a group of doctors to band together and pool their respective 'unlimited personal liability.' " (Governor's Message to Assem. on Assem. Bill No. 1898 (Sept. 29, 1976).) In fact, defendants are statutorily prohibited from holding themselves out as insurance companies; subdivisions (f) (1) and (2) of Insurance Code section 1280.7 specifically provide: "It shall be a false or misleading statement to state or represent that a cooperative corporation or interindemnity arrangement is or constitutes 'insurance' or an 'insurance company' or an 'insurance policy.' "

Thus, plaintiff has failed to offer any evidence that defendants either are indemnifying for anything other than malpractice claims or are improperly engaging in the insurance business. In any event, even were such violations to be established, they would not magically transform defendants' status so as to permit a *Royal Globe* action. Given the sound public policy considerations which led the *Moradi-Shalal* court to abolish *Royal Globe* actions, a contrary result in this context would be patently foolish. If violations occur, they are matters for the Commissioner of Corporations to handle pursuant to the authority given it by Corporations Code section 25100, subdivision (q)(1). (See fn. 2, *ante*.)

In light of this analysis, the trial court did not abuse its discretion when it denied plaintiff's request for leave to amend her complaint to allege these "facts" because even if the facts are true, liability would still not attach under the law. (See, e.g., *Lawrence* v. *Bank of America* (1985) 163 Cal.App.3d 431, 436-437 [209 Cal.Rptr. 541].)

The judgment is affirmed. Defendants to recover costs on appeal.

Compton, J., and Gates, J., concurred

---

[4] For example, the chief executive officer testified: "We've ended up covering slip-and-falls in the office, where a practitioner did not touch the patient but it was alleged that the patient should have been touched and held by the physician in getting off an examining table."